**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL J. O'CONNOR,**

                    **Petitioner,**            **1:05-CV-0818**
  **vs.**                                                     **(NAM)**
                                                         **Related Criminal Actions:**
**UNITED STATES OF AMERICA,**           **1:02-CR-00238;**
                                                          **1:02-CR-00436**

                    **Respondent.**
_____

**APPEARANCES**                               **OF COUNSEL:**

**FOR THE PETITIONER:**

Michael J. O'connor
11508-052
Federal Correctional Institution
PO Box 7000
Fort Dix, NJ 08640
Petitioner, *Pro Se*

Office of the United States Attorney        Edward P. Grogan,
445 Broadway
218 James T. Foley U.S. Courthouse
Albany, NY 12207-2924

**Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

**I.**     **Background**[1]

      Petitioner Michael O'Connor was arrested in May, 2002 following the robbery of a bank located in Warren County, New York. At the time he was arrested, O'Connor was in possession of clothing and a wig that resembled the attire that was worn by the perpetrator of other unsolved

---

[1] The background information contained in this Memorandum-Decision and Order is based upon information contained in the documents filed in the related criminal matters, *United States v. O'Connor*, 1:02-CR-0238 ("02-CR-0238") and *United States v. O'Connor*, 1:02-CR-0436 ("02-CR-0436"), as well as the present civil action, *O'Connor v. United States*, No. 05-CV-0818 ("05-CV-0818").

bank robberies in the area. A subsequent search of O'Connor's house pursuant to a warrant the night of his arrest resulted in the discovery of various other articles of clothing that appeared to resemble clothing used by the perpetrator of several other bank robberies in the preceding twelve months. During the ensuing criminal investigation, tellers from banks that had recently been robbed informed law enforcement agents that an individual resembling O'Connor, wearing clothing similar to the type seized by the police, had robbed the Schoharie Fleet Bank on August 17, 2001, the Trustco Bank in Hudson, New York on September 10, 2001, the Adirondack Bank in Utica on January 14, 2002, and the Charter One Bank in Worcester, New York, on January 29, 2002.[2] During the commission of these offenses, the perpetrator had also brandished a pistol.

As a result of the foregoing, on June 26, 2002, a grand jury sitting in the Northern District of New York returned a four count indictment against O'Connor, charging him with: i) committing the robberies at the Trustco Bank on September 10th, the Adirondack Bank on January 14th and the Charter One Bank on January 29th; and ii) criminal use of a firearm during a crime of violence. *See* No. 02-CR-0238, Dkt. No. 7 ("Indictment"). Thereafter, on November 15, 2002, a criminal information was filed against O'Connor by Assistant United States Attorney Edward P. Grogan, Esq. ("AUSA Grogan") which charged O'Connor with committing the August 17th robbery of the Fleet Bank in Schoharie. *See* No. 02-CR-0436, Dkt. No. 2 ("Information").

On November 15, 2002, following negotiations between O'Connor's counsel and AUSA Grogan, O'Connor entered into a plea agreement wherein he agreed to plead guilty to the charges brought against him in the Indictment and the Information. *See* Plea Agreement (02-CR-0238, Dkt. No. 15) ("Plea Agreement") at ¶ 1(a). That agreement contained a provision which noted

---

[2] At the time of the robberies, all of the banks were insured by the Federal Deposit Insurance Corporation.

that, if O'Connor's guilty plea were accepted by the Court, he would be sentenced to a term of 240 months imprisonment. *Id.* at ¶ 4. The parties also agreed that, to the extent that such sentence exceeded the term suggested under the United States Sentencing Guidelines, the upward departure in his sentence was nevertheless justifiable under U.S.S.G. § 6B1.2(c)(2) for the following reasons:

> [T]o hold the defendant accountable for an egregious series of armed bank robberies during and in relation to which he carried and brandished a firearm in each of the bank robberies. In addition to the four robberies that are the subject of the instant federal charges, two other armed robberies committed by [O'Connor] are being prosecuted in Warren County, New York, the district attorney for which has agreed to a sentence that is concurrent to the sentence imposed in this case.

*See* Plea Agreement at ¶ 4.

At the proceeding over which this Court presided wherein O'Connor formally entered his change of plea, he admitted to the Court that he had engaged in the conduct alleged in the Information. *See* Transcript of Change of Plea (11/15/02) (No. 05-CV-0818, Dkt. No. 5-2) ("Plea Tr.") at p. 9.[3] He then admitted to having engaged in the conduct specified in the Indictment. *Id.* at pp. 9-11. AUSA Grogan then discussed in detail the legal bases for the criminal charges brought against O'Connor. *See id.* at pp. 15-17. Following that discussion, AUSA Grogan discussed the agreed upon sentence in the Plea Agreement. Specifically, the transcript of O'Connor's change of plea reflects the following discussion concerning his sentence:

> THE COURT:     .... Mr. Grogan, would you inform the defendant and the Court what the maximum penalty is for the counts involved here?

---

[3] O'Connor had previously waived his right to have a grand jury consider returning an indictment against him relating to the charge contained in the Information. Plea Tr. at p. 4.

| | |
|---|---|
| MR. GROGAN: | Your Honor, the plea agreement refers to an agreed upon sentence. |
| THE COURT: | Paragraph four? |
| MR. GROGAN: | Would you like me to address that? |
| THE COURT: | Yes, address paragraph four. |
| MR. GROGAN: | Your Honor, pursuant to paragraph four of the plea agreement, the defendant and the U.S. Attorney both have agreed to a specified period of incarceration of 240 months, a period of supervised release following a period of incarceration of five years....  And that's the maximum penalty in this case, Your Honor. |
| THE COURT: | All right.  Now, you understand that, Michael O'Connor, if I agree with this, that's going to be your sentence, 240 months, do you understand that? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And you talked that out with your attorney? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | So we're not necessarily going by sentencing guidelines, we're going to go by the other section of law here then, is that correct, counsel? |
| MR. GROGAN: | Yes, Your Honor.  The agreed upon sentence is higher than what the sentencing guidelines would be in this case. |

* * * * *

| | |
|---|---|
| THE COURT: | Okay.  Now that you have been informed of the penalty to the extent that I note, 240 months, do you still wish to enter a plea of guilty? |

4

> THE DEFENDANT: Yes, sir.
>
> \* \* \* \* \*
>
> THE COURT: And you understand the penalty that can be – that is going to be imposed upon you on the date of sentence?
>
> THE DEFENDANT: Yes, sir.

*Id.* at pp. 17-19. This Court then accepted O'Connor's guilty plea to the charges against him in both the Information and the Indictment. *Id.* at p. 22.

On May 13, 2003, O'Connor appeared before this Court for sentencing. *See* Transcript of Sentencing (5/13/03) (05-CV-0818, Dkt. No. 5-3) ("Sentencing Tr."). At that proceeding, defense counsel discussed in detail the basis for the negotiated 240 month term of imprisonment. *See id.* at pp. 5-6. O'Connor then informed the Court that although he believed the term of imprisonment to be imposed was "overly long," he had discussed that matter with his counsel and concluded that the guilty plea and term of imprisonment reflected in the Plea Agreement was in his own best interest. *Id.* at p. 7. This Court then noted that the base offense level for O'Connor's crime was 20, his total offense level was 24, and his criminal history category was level III. *Id.* at p. 8. Based upon the agreed upon sentence contained in the Plea Agreement, this Court sentenced O'Connor to concurrent terms of 156 months imprisonment on his guilty plea relating to Counts One, Two and Three of the Indictment and to the Information, and a consecutive term of 84 months relating to his conviction on Count Four of the Indictment. *Id.* at p. 8

O'Connor did not file any appeal relating to his conviction or sentence.

On June 24, 2005, O'Connor filed the present Motion to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255. *See* 05-CV-0818, Dkt. No. 1 ("Motion to Vacate"). However, that pleading did not contain any specific grounds for relief, but instead claimed that

documents he had requested from the Clerk of the Court relating to his criminal case had not been provided to him, and that he wished to "supplement this motion ... within a reasonable time, after receipt of the procedural record sought from the District Court."[4]  Motion to Vacate at 4.

The Government filed its response in opposition to O'Connor's application on July 28, 2005.  *See* 05-CV-0818, Dkt. No. 3 ("Resp. Mem.").

On September 6, 2005, petitioner filed a "Traverse" in further support of the present motion.  *See* Dkt. No. 4.  In that submission, O'Connor asserts that his conviction and sentence violated his rights under the Sixth and Eighth Amendments to the United States Constitution, as well as the principles announced by the Supreme Court in *Blakely*.  Traverse at p. 4.[5]  Specifically, O'Connor asserts that his appellate waiver cannot preclude him from challenging his conviction and sentence under *Blakely* because that waiver was executed before the *Blakely* decision was issued by the Supreme Court.  Traverse at p. 2.  As to his Sixth Amendment claim, O'Connor asserts that his trial attorney "failed to challenge" this Court's alleged error in applying the Sentencing Guidelines to O'Connor, and that, as a result, the Court imposed a "significantly increase[d] sentence."  *Id.*  With respect to his Eighth Amendment challenge, O'Connor contends that the imposed sentence will force O'Connor "to serve an additional 11 years beyond the prescribed term of imprisonment.  This certainly constitutes cruel and unusual punishment."

---

[4] O'Connor did appear to claim in that submission that his conviction and/or sentence may have run afoul of the Supreme Court's holding in *Blakely v. Washington*, 542 U.S. 296 (2004) – in which the Supreme Court invalidated portions of Washington State's determinate sentencing scheme as violative of an individual's Sixth Amendment right to a trial by jury.

[5] In his most recent submission, petitioner has not re-asserted his claim that he was not afforded access to the records generated in the criminal matter below.  Moreover, in his Traverse, O'Connor has articulated specific grounds he claims supports his argument that he is entitled to the relief sought by his Motion to Vacate.  Therefore, the Court deems any claims that the Clerk's Office did not provide O'Connor with documents necessary for him to craft his § 2255 application to necessarily be moot.

Traverse at p. 3.

**II.    Discussion**

    **A.    Retroactive Application of *Blakely***

O'Connor initially requests that this Court reconsider the imposed sentence because the Supreme Court's decision in *Blakely* was not issued until after O'Connor was sentenced. *See* Traverse at 2. O'Connor asserts that he "could not have waived rights that neither he nor this Court knew he had before the *Blakely* decision." *Id.*

Unfortunately, this claim appears to overlook the well-settled legal precept that ignorance of future rights does not cause an otherwise valid guilty plea to have not been knowingly made. *See United States v. Haynes*, 412 F.3d 37 (2d Cir. 2005) (rejecting argument that guilty plea was not knowingly entered because it preceded the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), "[w]hile ignorance of then-existing rights can invalidate a plea agreement in some cases, ignorance of future rights is unavoidable and not a basis for avoiding a plea agreement").[6]

It is equally well-settled that *Blakely* may not be applied retroactively to collateral challenges brought by petitioners pursuant to 28 U.S.C. § 2255. *See Green v. United States*, 397 F.3d 101, 102-03 (2d Cir. 2005); *Vargas v. United States*, No. 00 CV 2275, 2007 WL 2246004, at *9 (E.D.N.Y. July 31, 2007) (citing *Green*); *Johnson v. United States*, No. 04-CV-1378, 2007 WL 804261, at *2 (N.D.N.Y. Mar. 14, 2007) (Mordue, J.) (citing *Green*) (other citations omitted). Therefore, the Court denies O'Connor's ground for relief which seeks relief based upon the *Blakely* decision.

---

[6] There is no evidence that the guilty plea into which O'Connor entered was not knowingly, intelligently and voluntarily made.

### B. Ineffective Assistance of Counsel

O'Connor next asserts that he received the ineffective assistance of counsel during the course of the criminal matter below. *See* Traverse at p. 3. In support of this assertion, petitioner argues that his counsel improperly failed to protect O'Connor's rights while negotiating the sentence in the Plea Agreement. In support of this assertion, he argues that he is:

> currently serving a federal prison term of 240 months. The ... authorized term mandates 97 months for his crimes of conviction. The Court has imposed an additional penalty of 143 months in violation of the rights guaranteed to an accused by the U.S. Constitution.

Traverse at p. 3. Petitioner asserts that defense counsel's "fail[ure] to challenge and argue" the length of O'Connor's sentence in the Plea Agreement "result[ed] in [a] significantly increase[d] sentence" that prejudiced O'Connor. *Id.* at p. 2.

"In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice. Both prongs of the test must be met." *United States v. Jones*, 455 F.3d 134, 151 (2d Cir. 2006). In addressing the adequacy of representation, courts "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

The record reflects that strategic reasons existed for defense counsel's decision to negotiate a twenty year term of imprisonment for O'Connor notwithstanding the fact that such term was higher than the period recommended under the Sentencing Guidelines. Specifically, at the sentencing hearing, defense counsel explained that two bank robbery charges were pending against petitioner in Warren County in addition to the federal charges that had been brought against him.

8

Sentencing Tr. at p. 6. Counsel explained that:

> [T]he day [O'Connor] was arrested ... they found this inoperable gun.... [In] the state system, it's an affirmative defense that the gun was inoperable and so he was not guilty of a class B felony of robbery in the first degree but only a class C felony, with a maximum of 15 years. But the prosecutor wouldn't [agree] that it was the same gun in the previous bank robbery ... and we were concerned that he wouldn't be able to use the affirmative defense in a bank robbery where it wasn't the actual seizure, he would have to have convinced the jury.... [H]e was still looking at two 15-year consecutive sentences there, and the offer, according to that district attorney, was 20 years.

*Id.* Thus, independent of the federal charges brought against O'Connor, he faced the distinct possibility that he would receive two consecutive, fifteen year sentences on state charges brought against him in Warren County. As a result of the Plea Agreement negotiated by O'Connor's counsel, however, the twenty year sentence imposed on him by this Court runs concurrent with a twenty year sentence imposed on him arising out of his guilty plea to the two bank robbery prosecutions in Warren County. *See* Sentencing Memorandum of United States (02-CR-238, Dkt. No. 17) at p. 2; *see also* Plea Tr. at p. 21.

It is therefore clear that defense counsel's conduct in negotiating the twenty year term of imprisonment was objectively reasonable; it eliminated the possibility of O'Connor receiving sentences that could have totaled thirty years imprisonment arising out of the state court charges – which sentences could also have been ordered to run consecutive to his federal sentence.[7]

Since the agreed upon sentence in the Plea Agreement reflected objectively reasonable

---

[7] O'Connor readily accepted his responsibility for the bank robberies that were prosecuted in state court; he specifically instructed his counsel to avoid filing any Fourth Amendment challenge relating to those charges because he conceded that he had committed those crimes. *See* Sentencing Tr. at p. 5.

9

conduct on the part of O'Connor's counsel, his claim alleging ineffective assistance is without substance.

### C. Eighth Amendment Challenge

O'Connor's final ground for relief asserts that the imposed sentence, which he claims is "11 years beyond the prescribed term of imprisonment ... certainly constitutes cruel and unusual punishment." Traverse at p. 3. Specifically, he asserts that the 240 month term of imprisonment imposed on him by this Court is 143 months higher than the maximum term of 97 months imprisonment that could have legally been imposed on him under the United States Sentencing Guidelines. *Id.*

Initially, the Court notes that O'Connor has miscalculated the term of imprisonment to which he would have been subject following his conviction on the crimes brought against him in the Information and Indictment. As this Court noted at the sentencing hearing, O'Connor's total offense level of 24, together with his criminal history category of III, subjected O'Connor to a term of imprisonment of between 63 to 78 months on Counts One through Three of the Indictment, together with the charge against him in the Information. *See* Sentencing Tr. at pp. 7-8. However, his conviction on the firearms charge in Count Four of the Indictment subjected him to a ***mandatory consecutive*** term of imprisonment of 84 months. *See id.* at p. 8; *see also United States v. Mitchell*, 358 F.3d 216, 217 (2d Cir. 2004) (mandatory, seven-year consecutive sentence is required for anyone convicted of brandishing a firearm during the commission of a crime of violence) (citing 18 U.S.C. § 924(c)(1)(A)(ii)). Thus, if O'Connor had been sentenced to the high end of the guidelines range on his non-firearms convictions, his aggregate sentence would have been 162 months, not the 97 months referenced by O'Connor in his Traverse. *Compare*

10

Sentencing Tr. at pp. 7-8 *with* Traverse at p. 3.

Regardless, as discussed more fully above, the agreed upon sentence contained in the Plea Agreement resolved not only the four bank robbery charges that had been brought against O'Connor in federal court, but also two other bank robberies O'Connor had committed in Warren County which may well have been prosecuted separately by that county's District Attorney.

Since nothing before the Court suggests that the agreed upon sentence in the Plea Agreement, which satisfied six felony bank robbery charges involving O'Connor, constitutes cruel and unusual punishment, this final ground for relief must be denied. *C.f. Ewing v. California*, 538 U.S. 11, 28-31 (2003) (rejecting constitutional challenge to twenty-five year to life sentence imposed under state's three-strikes law where challenged conviction was for a non-violent theft of golf clubs valued at $1200.00); *United States v. Snipe*, 441 F.3d 119, 152 (2d Cir. 2006) (rejecting Eighth Amendment challenge to "three-strikes" sentence of life imprisonment following conviction for conspiracy to commit bank robbery); *see also United States v. Bennett*, 252 F.3d 559, 566-67 (2d Cir. 2001) (twenty year sentence following fraud conviction not violative of Eighth Amendment).

### III.     Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
>> (B) the final order in a proceeding under section 2255.[8]

---

[8] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed.R.App.P. 22(b).

A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2).  Since O'Connor has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998).

**WHEREFORE**, after having reviewed the record relating to the underlying criminal matter, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED** that Petitioner's Motion to Vacate (Dkt. No. 1) is **DENIED**, and it is further

**ORDERED** that Petitioner's request for records referenced in his Motion to Vacate (Dkt. No. 1) is **DENIED AS MOOT** for the reasons stated above, and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Order on the parties by electronic or regular mail.

No Certificate of Appealability shall be issued by this Court.

**IT IS SO ORDERED.**

Date:   June 18, 2008

Norman A. Mordue
Chief United States District Court Judge